Filed 3/16/21  P. v. Zendejas CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO SANCHEZ ZENDEJAS,<br><br>    Defendant and Appellant. | H048029<br>(San Benito County<br>Super. Ct. No. CR-19-01331) |

## I.  INTRODUCTION

Defendant Francisco Sanchez Zendejas pleaded no contest to criminal threats (Pen. Code, § 422, subd. (a))[1] and was sentenced to three years in prison.  On appeal, defendant contends that the prison sentence was a breach of his plea agreement, in which he purportedly pleaded no contest in exchange for a grant of probation.  Defendant argues that he should be given the opportunity to withdraw his plea.

For reasons that we will explain, we determine that defendant's plea agreement did not clearly provide for a grant of probation, but that, based on the record in this case, defendant should be permitted to bring a motion to withdraw his plea.  We will reverse the judgment and remand with directions to allow defendant to bring a motion to withdraw his plea.

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II. BACKGROUND

### A. *The Incidents*[2]

On September 21, 2019, defendant was in his parents' backyard throwing rocks at a neighbor's house. When the neighbor came out of the residence, defendant yelled, " 'I will fucking shoot you!' " Defendant then threw gravel towards the neighbor. The next day, on September 22, 2019, defendant was in his parents' backyard when he threw one or two glass bottles over the fence into the same neighbor's yard. On September 25, 2019, a different neighbor heard defendant throwing items around and cussing in the backyard of his parents' residence. The police later located defendant in his parents' residence hiding in an attic crawl space. Defendant held the attic door closed, preventing officers from gaining access. The police finally forced the door open, and defendant was arrested. The police determined that defendant's presence at his parents' residence violated multiple protective orders requiring him to stay away from various neighbors and their residences.

### B. *The Charges*

Defendant was charged by information with criminal threats (§ 422, subd. (a); count 1), attempting to dissuade a witness or victim from testifying (§ 136.1, subd. (a)(2); count 2), attempting to dissuade a victim or witness from reporting a crime (§ 136.1, subd. (b)(1); count 3), six counts of misdemeanor violating a protective order (§ 166, subd. (c)(1); counts 4, 5, 8, 9, 13 & 14), three counts of misdemeanor disobeying a court order (§ 166, subd. (a)(4); counts 6, 10 & 15), three counts of misdemeanor disturbing the peace (§ 415, subd. (2); counts 7, 11 & 16), and misdemeanor resisting an officer (§ 148, subd. (a)(l); count 12).

### C. *The No Contest Plea*

In December 2019, the trial court referred the matter to the probation department regarding defendant's "Behavioral Health court eligibility." Subsequently, on

---

[2] The facts are taken from the police report that provided the factual basis for defendant's plea.

January 22, 2020, a hearing was held regarding trial setting and to review defendant's eligibility for behavioral health court. At the outset of the hearing, a behavioral health officer summarized the meetings that had been held with defendant, his compliance with taking medication, and a plan for his housing.

The trial court then sought input from defense counsel. Defense counsel responded, "I spoke with [defendant] yesterday, and I believe we have a resolution in his matters. [¶] In case 1331 [(the instant case)], [defendant] would be entering a plea to Count 1, to violation of Section 422 of the California Penal Code, making a criminal threat, 422(a). It is a felony. He would enter a plea of no contest to that count. The remaining counts in that complaint would be dismissed." In two other cases, defendant would plead no contest to a single count in each case. Counsel stated that "[a]ll the remaining complaints would be dismissed," except a "DUI" case, which would be "handle[d] . . . separately" with a written waiver that counsel needed to go over with defendant. Counsel then stated, "*But as to the behavioral health court matters, these three matters will all be under the auspices of behavioral health.*" (Italics added.) Counsel further indicated to the court that defendant would be admitting the violation of probation in another case, but that "[a]ll the remaining cases would be dismissed."

The trial court stated that there were "a couple other matters he's on probation for, but they're just here for fees. [The court would] be giving him some more time for that once he's out."

Defendant asked whether he could be released or have his bail lowered so that he could return to work. The trial court responded: "A couple of matters. The whole issue as to employment is going to have to be looked at, because you're going to have a lot of obligations. Ultimately they're going to want you to be employed. But initially, it may not be possible for you to continue employment. You're going to have a heck of a lot of meetings to attend and obligations to address. Once you move through the process a little

3

more and have a little bit more free time, then that issue is going to be there. [¶] But first things first. If you go into behavioral health court, this is your health, okay?

Defendant indicated that his employer was "willing to work with [him]."

The trial court continued by stating, "Good. And ultimately, that may work out. I'm just not promising that . . . you'd have enough time right away. Okay? Because you're going to be looking at getting out fairly soon. *I'm going to look at sentencing you as quickly as possible. If you enter your plea today, putting you on probation in behavioral health, and coming back in about a week*." (Italics added.)

The trial court confirmed with defense counsel that the court would be dismissing four specific cases and that the DUI case would be addressed separately.

Defendant interjected that he was "not guilty of these allegations" and he "did not threaten anybody." The trial court responded that the matter could be scheduled for a hearing because if defendant was "maintaining [his] innocence, *then entering a plea and proceeding with behavioral health court is kind of contrary to that*." (Italics added.) Defendant stated that "[i]f it benefit[ted] [him]," he was "willing to plead to some charges" but "[j]ust not this one."

The trial court then stated its understanding of defendant's plea twice. Both times, the court stated that defendant would be entering a plea of guilty or no contest in three cases, admitting a violation of probation in a fourth case, and in "exchange" four other cases would be dismissed.

Regarding the three cases in which defendant would be entering a plea of guilty or no contest, the trial court stated its understanding as follows. In the first case (the instant case), defendant would be pleading to count 1, a felony violation of section 422, based on the allegation that defendant threatened to commit crimes with respect to the victim. The court stated that, "[i]n exchange for [defendant's] plea to that, the balance of the charges would be dismissed . . . ." Regarding the second case, the court stated that the court had been "told" that defendant would be entering a plea to count 1, a violation of section 166,

subdivision (c)(1), regarding violating a protective order. Regarding the third case, defendant was also charged with violating a protective order. The court further indicated that the probation violation case involved the allegation that defendant violation his probation "by committing these other crimes." When the court asked whether defendant understood the cases, defendant responded affirmatively.

The trial court then had the following exchange with defendant:

"THE COURT: . . . [¶] *Now, I understand that you're eligible and you want to participate in behavioral health in all of those cases, and that would be the intention of the Court, is to place you on probation with behavioral health court conditions.* [¶] Do you understand that?

"THE DEFENDANT: Yes, sir." (Italics added.)

The trial court advised defendant regarding his trial-related constitutional rights, and defendant waived those rights. The court observed that defendant had previously waived his right to a preliminary examination in the instant case. The court then stated, "Speaking of that case, that's the only felony charge that you'll be entering a plea to, and that carries with it a maximum sentence of confinement of up to three years in State Prison. [¶] After you serve any time in State Prison you'd be subject to a maximum parole period or Post Release Community Supervision period of three years, generally, with an additional year that could be added to parole for any misconduct." Defendant indicated that he understood. The court further stated to defendant that if he "violate[d] the terms of parole or Post Release Community Supervision, [he could] be returned to the confinement of County jail for up to180 days for a violation, for a maximum of four additional years for multiple violations in case of parole violations, or a maximum of three additional years in the case of multiple Post Release Community Supervision violations." Defendant again indicated that he understood. Regarding the charges for violating section 166, subdivision (c)(1) [violating a protective order], the court advised that the maximum penalty was one year in county jail and fines of $4,200. Defendant indicated that he understood.

5

The trial court stated, "Now, you appear eligible for probation, which could be up to five years or longer if the maximum sentence is higher for the felony matter. The Court may impose conditions of probation that relate to your crime, including confinement in county jail and/or a fine." Defendant indicated that he understood.

The trial court further stated, "If you're granted probation and violate probation, you could then be sentenced to the maximum term. [¶] . . . [¶] You'd be ordered to pay fines of up to $10,000 in your felony case, a penalty assessment of a little over 2.7 times that amount, a restitution fine of a minimum of $300 to a maximum of $10,000, and various other fees. [¶] If you were sentenced to prison, there would be a parole revocation restitution fine. If you were placed on probation, there will be a probation revocation restitution fine. [¶] Now, all of these fines would equal the amount of the restitution fine, and all will be suspended unless parole, Post Release Community Supervision, or probation is revoked. [¶] You also will be ordered to pay restitution to any victim for any economic injury suffered by the victim in an amount to ordered by the Court." Defendant again indicated that he understood.

The parties stipulated to a factual basis for the pleas based on the police report.

The trial court asked defendant whether anyone had promised him anything, other than what had been stated in open court that day, that would cause him to change his plea. Defendant responded, "No." The court confirmed that defense counsel had explained to defendant the nature of the charges, allegations, defenses, and consequences, and that counsel and defendant had had enough time to talk.

Defendant proceeded to plead no contest to count 1, criminal threats (§ 422, subd. (a)) in the instant case. In two other cases, he pleaded no contest to violating a protective order. In a fourth case, he admitted violating his probation. The trial court accepted defendant's pleas, admissions, and waivers and found that he had made them intelligently and voluntarily.

6

The trial court stated that the matter would be referred to probation for "*orders on the behavioral health court to return here . . . .*" (Italics added.) The court asked defense counsel regarding waiver of a presentence report. Defense counsel responded, "*We would waive the pre-sentence report.* [¶] *He is going to be accepted into the behavioral health court, and we just need orders for that.*" (Italics added.) The court stated, "*Okay, very good.*" (Italics added.) The court then stated to defendant, "[Y]ou have the right to have a pre-sentence report before I sentence you on the felony matter, *the indication is going to behavioral health court.*" (Italics added.) In response to the court's inquiry, defendant indicated that he waived the right to a presentence report. The remaining counts in the instant case were submitted for dismissal at the time of sentencing, which was scheduled for January 29, 2020.

**D.** *Reports Submitted to the Trial Court*

On January 27, 2020, a written status report was submitted to the trial court by a behavioral health staff member. The report included defendant's mental health and substance use diagnoses, the level of medical care needed, the intensive services he was currently receiving and/or was considered for, and the level of risk of violence without treatment. The report indicated that defendant met eligibility criteria, that he would be enrolled on January 29, 2020, and that a treatment team would be assigned on that date.

On January 29, 2020, the date set for sentencing, the record reflects that a hearing was held and that the matter was referred to the probation department for a presentencing report. Sentencing was continued to February 26, 2020.

In the meantime, on February 21, 2020, a probation report was filed with the trial court. The probation officer indicated that defendant had pleaded no contest to count 1, and that the remaining counts 2 through 16 were submitted for dismissal at the time of sentencing. Regarding "plea agreement/terms," the probation report indicated that there were "none." (Capitalization omitted.)

The probation officer set forth the following circumstances in aggravation: (1) the crime involved a threat of great bodily harm and, specifically, defendant's threat to shoot the victim; (2) defendant's prior convictions were numerous, with his prior adult criminal record consisting of one infraction, 36 misdemeanor convictions, and three felony convictions; (3) defendant had served a prior prison term; (4) defendant was on probation in three cases when he committed the instant offense; and (5) defendant had numerous probation violations. The probation officer found no circumstances in mitigation. The probation officer recommended that defendant be sentenced to the upper term of three years in prison.

Attached to the probation report was a written statement from defendant, who claimed that neighbors were targeting his parents. Also attached to the probation report was a written statement from the neighbor who had been verbally threatened by defendant, as well as statements from 15 other neighbors who claimed to have been victims and/or witnessed incidents involving defendant. The incidents described by the neighbors included defendant's verbal threats of physical harm, throwing of items, and loud and vulgar outbursts at all hours. The incidents apparently occurred over a years-long period of time. Neighbors expressed anxiety and fear as a result of the incidents.

**E.** *Appointment of Second Counsel for Defendant*

On February 26, 2020, the date of the continued sentencing hearing, the record reflects that defendant, who had been represented by appointed counsel, was appointed another counsel to review defendant's plea. The court set another date for "setting of hearing or sentencing." (Capitalization omitted.)

On March 18, 2020, the record reflects that a hearing was held. The clerk's minutes for the hearing state, "[Defendant's second attorney] present – no basis found to withdraw plea."[3] The trial court scheduled the sentencing hearing for the next day.

---

[3] The clerk's minutes reflect that a "[c]ourt reporter [was] waived" for this hearing.

8

**F. *Sentencing Hearing***

The next day, on March 19, 2020, the sentencing hearing was held by the same judge who had taken defendant's no contest plea. Defendant's original appointed counsel requested the trial court "to, again, reconsider a sentence of felony probation." Counsel acknowledged that there had "been a lot of discussion" regarding whether defendant "would be amenable to probation." Counsel believed that defendant had an "underlying medical condition that could be treated locally," and that defendant may have "a longer period of supervision by authorities and for treatment" if he was supervised locally than if he was sent to prison. Counsel "ask[ed] the Court to reconsider the decision to send him to prison."

Defendant's counsel also noted that the second appointed counsel "reviewed the file to determine whether or not there was any grounds to file a motion to withdraw the plea, and . . . informed [original appointed counsel] and . . . informed the Court that he did not find any grounds." The trial court responded, "That is true and we did put that on the record, hence why we moved it over to today for sentencing."

The probation officer submitted on the recommendation of prison in the probation report. The probation officer referred to defendant's 36 misdemeanor convictions and the fact that his current offense indicated he was "a danger to the community and very unpredictable."

The trial court proceeded to sentence defendant. The court indicated that it had reviewed the instant case along defendant's other pending cases. The court stated, "I shared defense's hope of supervision and treating the underlying [*sic*]. And, unfortunately, we pursued those and the different avenues, both formally and under supervision of [defendant], and informally, trying to see if he would be eligible for various other calendars. For various reasons, those had dead ends. And I don't believe that probation is appropriate for all of those reasons, and the fact that he has numerous violations of adult probation, and I will, therefore, deny probation."

9

The trial court imposed the upper term of three years on count 1 (§ 422, subd. (a) [criminal threats]). The court explained: "[T]he upper term of three years is imposed based on the pattern of regular, increasingly serious criminal conduct and the fact that there are five points in total of aggravation and zero points in mitigation noted in the probation report . . . ." The remaining counts were dismissed. The court sentenced defendant in several other cases, with those terms to run concurrent to the sentence in the instant case, and the court also dismissed several cases on motion of the prosecutor.

Defendant filed a notice of appeal in the instant case and obtained a certificate of probable cause.

### III. DISCUSSION

Defendant contends that he pleaded no contest to criminal threats "in exchange for" a grant of probation. He argues that the trial court breached the plea agreement when the court sentenced him to prison, and that the court failed to advise him of his right to withdraw his plea. (See § 1192.5.) Defendant requests that the judgment be reversed, and that the trial court be directed "to advise [him] of his right to withdraw the plea and to give him the opportunity to do so if he wishes." We understand defendant to also argue that the trial court's statements during the change of plea hearing induced him to plead guilty.

The Attorney General contends that a grant of probation was not a term of the plea agreement. The Attorney General argues that even if plaintiff believed he was entering a plea in exchange for a promise of a grant of probation, he forfeited his claim by failing to object at sentencing or moving to withdraw his plea.

#### A. *General Legal Principles Regarding Plea Agreements*

"[T]he process of plea negotiation 'contemplates an agreement negotiated by the People and the defendant and approved by the court. [Citations.] Pursuant to this procedure the defendant agrees to plead guilty [or no contest] in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. [Citation.] . . . Judicial approval is an essential condition

10

precedent to the effectiveness of the "bargain" worked out by the defense and prosecution. [Citations.]" (*People v. Segura* (2008) 44 Cal.4th 921, 929-930.) " '[A] judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. [Citation.] . . . Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. [Citation.] Once the court has accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain . . . unless, of course, the parties agree." [Citation.]' [Citations.]" (*Id.* at p. 931, fn. omitted.)

"[E]very term of a plea agreement should be stated on the record. [Citations.]" (*People v. Feyrer* (2010) 48 Cal.4th 426, 438.) "The recordation of the plea bargain will afford to the appellate court, if such bargain is later collaterally or directly questioned, a complete account of the proceedings" (*People v. West* (1970) 3 Cal.3d 595, 610) and will "facilitate the prompt and accurate disposition of such appeals or collateral attacks" (*id.* at p. 611, fn. omitted).

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.] On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." [Citations.]' [Citation.] 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. [Citations.]' [Citations.]" (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)

11

**B.** *Analysis*

It is clear from the January 22, 2020 hearing, at which defendant entered his no contest plea, that the parties' plea agreement included defendant pleading no contest to three counts in three cases, including no contest to count 1 (criminal threats) in the instant case, and that in return, the remaining counts would be dismissed, along with the dismissal of the complaints in certain other cases. After defense counsel recited these terms at the January 22, 2020 hearing, defense counsel stated, "But as to the behavioral health court matters, these three matters will all be under the auspices of behavioral health." Although defense counsel referred to the three matters "be[ing] under the auspices of behavioral health," the record does not clearly reflect that defendant's placement on probation with behavioral health conditions was a term of the parties' plea agreement. The trial court, in describing the terms of the parties' plea agreement, repeatedly referred to defendant pleading guilty or no contest to certain counts in "exchange for" the dismissal of other counts and other complaints. In contrast, regarding sentencing in those cases, the court expressed its understanding that defendant "want[ed] to participate in behavioral health in all of those cases." The court went on to state at various times during the hearing that it was the court's "intention" and "indication" that defendant would be placed on probation with behavioral health conditions. These statements by the court reflect that, although a grant of probation was the court's intention or indication at that point in time, probation was not promised by the prosecutor or the court in exchange for defendant entering a no contest plea.

Although probation was not a clear term of the parties' plea agreement, we believe several statements by the trial court during the January 22, 2020 hearing created the impression that defendant would, without exception, be placed on probation. For example, the court stated near the beginning of the discussion regarding defendant's change of plea, "I'm going to look at sentencing you as quickly as possible. *If you enter your plea today, putting you on probation in behavioral health, and coming back in about a week.*" (Italics

12

added.)  When defendant asserted that he was "not guilty" of the allegations and denied threatening anyone, the court responded that if defendant was "maintaining [his] innocence, *then entering a plea and proceeding with behavioral health court is kind of contrary to that*." (Italics added.)  Defendant indicated that if it "benefit[ted]" him, he was "willing to plead to some charges" but "[j]ust not this one."  The court then recited the terms of the plea agreement, before stating that it was the court's "*intention . . . to place* [*defendant*] *on behavioral health court conditions*."  We believe this statement by the court regarding its intention to place defendant on behavioral health conditions, combined with the court's earlier, unqualified statements about placing defendant on probation with behavioral health conditions, may have created the impression that the court would grant probation without exception.  We also observe that after defendant entered his no contest plea, defense counsel stated, "*We would waive the pre-sentence report.* [¶] *He is going to be accepted into the behavioral health court*, *and we just need orders for that*."  (Italics added.)  The court stated, "*Okay*, *very good*."  (Italics added.)  This exchange again reinforced an impression that defendant would, without exception, be placed on probation with behavioral health conditions.

It appears from the record that the parties and the trial court had discussions about defendant's potential "Behavioral Health court eligibility" prior to the change of plea hearing.  The content of those discussions is not apparent from the record on appeal.  We also note that the sentencing hearing was continued several times due to the trial court ordering the preparation of a probation report (after defendant had previously waived the report), and due to the court appointing a second counsel for defendant.  It is not clear from the record on appeal what prompted those orders.  Further, at the sentencing hearing, the court indicated that it had hoped that defendant would have supervision and treatment.  The court stated that "unfortunately, we pursued those and the different avenues, both formally and under supervision of [defendant], and informally, trying to see if he would be eligible

13

for various other calendars. For various reasons, those had dead ends." It is not clear from the record what "dead ends" the court was referring to.

On this record, we conclude that, although probation was not a clear term of defendant's plea agreement, the trial court's statements during the January 22, 2020 change of plea hearing created the impression that defendant would be placed on probation without exception. Given the lack of clarity in the record regarding the events that transpired before and after the change of plea hearing, we determine that defendant should be given the opportunity to bring a motion to withdraw his plea. (See *People v. Williams* (1998) 17 Cal.4th 148, 164 [opportunity to withdraw the plea was the appropriate remedy where the trial court " 'had indicated its willingness to consider striking [one of] the prior felony conviction allegations,' " which " 'manifestly influenced [the defendant's] decision to plead guilty' "]; see also *id.* at p. 164, fn. 7.) We express no opinion on how the trial court should rule on the motion.

## IV. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for the limited purpose of allowing defendant to bring a motion to withdraw his plea. If the motion is not filed within 30 days after remittitur of record is filed, or if the motion is denied, the trial court shall reinstate the judgment.

14

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

DANNER, J.

*People v. Zendejas*
**H048029**